IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ANDRE LAMOND MORGAN,           }
TDCJ-CDI No. 1282900,          }
      Petitioner,           }
v.                             }          CIVIL ACTION H-07-2222
NATHANIEL QUARTERMAN.,         }
      Respondent.           }

## OPINION ON DISMISSAL

Petitioner Andre Lamond Morgan, an inmate incarcerated in the Texas Department of Criminal Justice – Correctional Institutions Division ("TDCJ-CID"), has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his felony conviction for murder.  (Docket Entry No.1).  Respondent has filed a motion for summary judgment, seeking dismissal of the petition on the ground that petitioner failed to meet his burden of proof under 28 U.S.C. § 2254(d).  (Docket Entry No.14).  Petitioner has filed a response to the motion (Docket Entry No.16) and a motion for default judgment against respondent.  (Docket Entry No.15).  After considering all pleadings and the entire record, the Court will grant respondent's motion for summary judgment and deny petitioner federal habeas relief.

## I. BACKGROUND AND PROCEDURAL HISTORY

Petitioner entered a plea of *nolo contendere* without an agreed punishment recommendation to the charge of first degree murder in cause number 964309 in the 174th District Court of Harris County, Texas.  *Morgan v. State*, No.13-05-106-CR, Clerk's Record, page 362.  The Court found sufficient evidence to convict petitioner but deferred a finding pending review of a presentence investigation report ("PSI").  *Id.*, Reporter's Record, Volume IV, page 3.  Upon completion of the PSI, petitioner sought to withdraw his plea.  *Id.* at 3-7.  After a

1

brief hearing, the state district court denied petitioner's motion and found him guilty as charged. *Id.*, at 7.  The state district court then heard evidence and argument regarding punishment.  *Id.* at 7-13.  Punishment was assessed at thirty years confinement in TDCJ-CID.  *Id.* at 13-14.

Petitioner's filed a direct appeal, which was dismissed for want of jurisdiction. *Morgan v. State*, No.13-05-106-CR (Tex. App.—Corpus Christi-Edinburg 2005, pet. ref'd).  The Texas Court of Criminal Appeals refused his petition for discretionary review on June 22, 2006. *Morgan v. State*, PD-0474-06.  Petitioner sought state habeas relief on the following grounds:

1. His trial counsel rendered ineffective assistance of counsel when he failed to:

    a. Adequately inform petitioner of the constitutional waivers he waived;

    b. Adequately inform petitioner of the required *mens reas* and *actus reas* in relation to the facts of his case; and,

    c. Object to the use of the presentence investigation report.

2. Petitioner's plea was involuntary because his trial counsel did not inform him of the intent element required to sustain a murder conviction;

3. His conviction is void because the State used inconsistent and irreconcilable theories to convict petitioner and his co-defendant of the same crime; and,

4. His conviction is void because the state district court usurped the power of the Legislature in violation of the separation of powers doctrine.

*Ex parte Morgan*, Application No.WR-60,619-03, pages 13-14, 20-44.  The state district court recommended that relief be denied and entered findings of fact and conclusions of law.  *Id.* at 109-111.  On March 28, 2007, the Texas Court of Criminal Appeals denied the application without written order on findings of the trial court without a hearing.  *Id.* at cover.

In the pending action, petitioner seeks federal habeas relief on grounds that his trial counsel's representation was deficient and prejudicial because trial counsel failed to inform him of the constitutional waivers, admonishments, or intent element of the murder charge as it

relates to him.   (Docket Entries No.1, No.2).   Petitioner also contends that his plea was involuntary because he was misled by the trial court's admonishments and his trial counsel's failure to inform him of the ramifications of the content of the forms he signed and the application to his case.   (Docket Entry No.1).   Specifically, petitioner claims he did not understand the admonishments of the court or that the State had the burden to prove his criminal intent to kill and that his conduct would cause the death of complainant as alleged in the indictment.  (Docket Entry No.2).

Respondent moves for summary judgment on grounds that petitioner's claims are partially unexhausted and procedurally barred and that petitioner's remaining claims are without merit.  (Docket Entry No.14).

## II. STANDARD OF REVIEW

In deciding a motion for summary judgment, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56.  The moving party bears the initial burden of informing the court of the basis of the motion and identifying the portions of the record demonstrating the absence of a genuine issue for trial.  *Taita Chem. Co. v. Westlake Styrene Corp.*, 246 F.3d 377, 385 (5th Cir. 2001); *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 276 (5th Cir. 1992).  Thereafter, "the burden shifts to the nonmoving party to show with 'significant probative evidence' that there exists a genuine issue of material fact." *Hamilton v. Seque Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (quoting *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)).

Petitioner's federal habeas petition is subject to the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  *Lindh v. Murphy*, 521 U.S. 320 (1997).  The AEDPA, codified as amended at 28 U.S.C. § 2254(d), "substantially restricts the scope of federal review of state criminal court proceedings." *Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).  Specifically, the AEDPA has "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

The petitioner retains the burden to prove that he is entitled to habeas corpus relief.  *Williams v. Taylor*, 529 U.S. 362 (2000).  In this case, petitioner presented claims in a petition for discretionary review and a state habeas corpus application, which the Texas Court of Criminal Appeals denied without written order on the trial court's findings without a hearing.  As a matter of law, a denial of relief by the Court of Criminal Appeals serves as a denial of relief on the merits of a claim.  *Miller v. Johnson*, 200 F.3d 274, 281 (5th Cir. 2000) (citing *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)).  Therefore, only those claims properly raised by petitioner in the petition for discretionary review or the state application for habeas corpus relief have been adjudicated on the merits by the state courts.

Where a petitioner's claim has been adjudicated on the merits, section 2254(d) holds that this Court shall not grant relief unless the state court's adjudication:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

4

28 U.S.C. § 2254(d)(1), (2); *Williams*, 529 U.S. at 411-13; *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Courts are to review pure questions of law and mixed questions of law and fact under subsection (d)(1), and pure questions of fact under subsection (d)(2). *Martin v. Cain*, 246 F.3d 471, 475 (5th Cir. 2001).

"The standard is one of objective reasonableness." *Montoya*, 226 F.3d at 403-04 (quoting *Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring)). Under this standard, a federal court's review is restricted to the reasonableness of the state court's "ultimate decision, not every jot of its reasoning." *Santellan v. Cockrell*, 271 F.3d 190, 193 (5th Cir. 2001) (citing *Cruz v. Miller*, 255 F.3d 77, 86 (2nd Cir. 2001) (noting that even where a state court makes a mistake in its analysis, "we are determining the reasonableness of the state court's 'decision,' . . . not grading their papers").

A decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413. A decision is an unreasonable application of federal law "if the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Id.* To be unreasonable, the state decision must be more than merely incorrect. *Gardner v. Johnson*, 247 F.3d 551, 560 (5th Cir. 2001). A reversal is not required unless "the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'" *Id.* Factual findings made by the state court in deciding a petitioner's claims are presumed correct, unless the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

While Rule 56 of the Federal Rules regarding summary judgment applies generally "with equal force in the context of habeas corpus cases," *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000), it applies only to the extent that it does not conflict with the habeas rules. *Smith*, 311 F.3d at 668 (citing Rule 11 of the Rules Governing Section 554 Cases in District Courts). Therefore, section 2254 (e)(1), which mandates that findings of fact made by a state court are presumed correct, overrides the ordinary rule that, in a summary judgment proceeding, all disputed facts must be construed in the light most favorable to the non-moving party. *Id.* Unless the petitioner can "rebut[] the presumption of correctness by clear and convincing evidence" as to the state court's findings of fact, those findings must be accepted as correct. *Id.*

## III. ANALYSIS

## A. Barred Claims

Respondent maintains that one of petitioner's ineffective assistance of counsel claims and one of his involuntary plea claims are unexhausted and procedurally barred from federal habeas review. (Docket Entry No.14). Specifically, respondent maintains that petitioner did not exhaust his claim that his trial counsel failed to inform him of the content of the admonishments. (*Id.*). Respondent further maintains that petitioner did not exhaust his claim that his plea was involuntary because he was misled or did not understand the trial court's admonishments or that his trial counsel failed to inform him of the forms' contents. (*Id.*).

Under 28 U.S.C. § 2254, a petitioner "must exhaust all available state remedies before he may obtain federal habeas corpus relief." *Sones v. Hargett*, 61 F.3d 410, 414 (5th Cir. 1995). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Mercadel v. Cain*, 179 F.3d 271, 275 (5th

6

Cir. 1999); *Fisher v. State*, 169 F.3d 295, 302 (5th Cir. 1999). *See also Castille v. Peoples*, 489 U.S. 346 (1989). A claim is exhausted when a habeas petitioner provides the highest state court with a "fair opportunity to pass upon the claim," which in turn requires that the applicant 'present his claims before the state courts in a procedurally proper manner according to the rules of the state courts." *Mercadel*, 179 F.3d at 275 (quoting *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988)). The substance of a federal claim is deemed "fairly presented" in state court for purposes of the exhaustion doctrine only if the petitioner relies upon identical facts and legal theories in both of the state court proceeding and the action for federal habeas relief. *Picard v. Connor*, 404 U.S. 270, 275-75 (1971); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

In Texas, exhaustion may take one of two paths: (1) the petitioner may file a direct appeal followed, if necessary, by a Petition for Discretionary Review in the Texas Court of Criminal Appeals, or (2) he may file a petition for writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure in the convicting court which, if denied, is automatically transmitted to the Texas Court of Criminal Appeals. *See Myers v. Collins*, 919 F.2d 1074 (5th Cir. 1990).

Petitioner complained in his state habeas application and memorandum that his trial counsel failed to adequately inform him of the constitutional waivers that petitioner waived, the ramifications of each waiver, the plea papers, and the Judicial Confession. *Ex parte Morgan*, Application No.WR-06-619-03, pages 18, 24. Petitioner did not specifically claim in his state habeas application that his trial counsel failed to inform him of the content of the admonishments. Petitioner also complained in his state habeas application and memorandum that his no contest plea was involuntary because he was not adequately informed about the specific intent necessary for a murder conviction and he did not understand the same when he

entered his plea.  *Id.* at 34-36.  He did not claim that his plea was involuntary because he did not understand the admonishments of the court.  Because petitioner's admonishment claims in the pending petition are different than the plea paper claims that he raised in his state habeas application, the Court finds that petitioner has presented unexhausted claims in this federal habeas petition.

Ordinarily, a federal habeas petition that contains unexhausted claims is dismissed, allowing the petitioner to return to the state forum to present his unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982).  Respondent, however, contends such a result in this case would be futile because petitioner's unexhausted claims would be procedurally barred as an abuse of the writ under Texas law.  (Docket Entry No.14.).

On habeas review, a federal court may not consider a state inmate's claim if the state court based its rejection of that claim on an independent and adequate state ground.  *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996).  A procedural bar for federal habeas review also occurs if the court, to which a petitioner must present his claims to satisfy the exhaustion requirement, would now find the unexhausted claims procedurally barred.  *Coleman v. Thompson,* 501 U.S. 722, 735 n.1 (1991).

Texas prohibits successive writs challenging the same conviction except in narrow circumstances.  TEX. CODE CRIM. PROC. ANN. art. 11.07,§4(a) (Vernon 2005).  The Texas Court of Criminal Appeals will not consider the merits or grant relief on a subsequent habeas application unless the application contains sufficient specific facts establishing the following:

> 1. the current claims and issues have not been and could not have been presented previously in an original application or in a previously considered application because the factual or legal basis for the claim was unavailable on the date the applicant filed the previous application; or

      2.  by a preponderance of the evidence, but for a violation of the United States Constitution no rational juror could have found the applicant guilty beyond a reasonable doubt.

*Id.*  The Texas Court of Criminal Appeals applies its abuse of the writ doctrine regularly and strictly.  *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (per curiam).  Therefore, petitioner's unexhausted claims do not fit within the exceptions to the successive writ statute and would be procedurally defaulted in state court.  *Coleman*, 501 U.S. at 735 n.1.  Such a bar precludes this Court from reviewing petitioner's claims absent a showing of cause for the default and actual prejudice attributable to the default.  *Id.* at 750.

      Petitioner has been given notice through respondent's motion for summary judgment that the Court would consider a dismissal of claims under the procedural default doctrine and has been given an opportunity to respond with any argument he may have opposing dismissal in a response to the motion for summary judgment.  See *Magouirk v. Phillips*, 144 F.3d 348, 359 (5th Cir. 1998).  Petitioner, however, fails to address the default, the cause of the default, or prejudice resulting from the default in his response to the motion for summary judgment.  Instead, petitioner claims that respondent misconstrued his ineffective assistance of counsel claim; petitioner contends that his counsel was ineffective because he abdicated his duty to thoroughly advise petitioner of all aspects of the case and to keep him adequately informed, which impliedly includes the admonishments.  (Docket Entry No.16).  Petitioner further claims that his involuntary plea claim is premised on his lack of understanding of the admonishments to the extent that the admonishments and other plea papers contain language regarding the specific intent element of the offense for which he entered a no contest plea.  (*Id.*).  He complains that the state habeas courts did not assess the merits of his claims properly and did not afford him a full and fair hearing.  (*Id.*).

Because petitioner has not shown cause for the default or actual prejudice attributable to the default nor that he is actually innocent, the Court is procedurally barred from considering such claims.  Accordingly, the Court will grant respondent's motion for summary judgment on this ground.

B. Exhausted Claims

Petitioner claims his plea was involuntary because he did not understand the specific intent element of first degree murder that the State was required to prove beyond a reasonable doubt.  (Docket Entries No.1, No.2, No.16).  Petitioner also claims that his trial counsel rendered constitutionally ineffective assistance because counsel did not inform him of the waivers in the plea papers that petitioner signed or adequately explain the intent element of the murder charge.  (Docket Entries No.1, No.2).  Because the involuntary plea centers upon acts and advice of his attorney, the Court considers the involuntary plea and ineffective assistance of counsel claims together.

A guilty plea[1] is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'"  *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-71 (1970)).  "Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution."  *Argersinger v. Hamlin*, 407 U.S. 25, 34 (1972).  A voluntary guilty plea waives all non-jurisdictional defects in the proceedings below except claims of ineffective assistance of counsel relating to the voluntariness

---

[1] Petitioner entered a plea of *nolo contendere*.  Under Texas law, a plea of *nolo contendere* has the same legal effect as a guilty plea.  TEX. CODE CRIM. PROC. art. 27.02(5) (Vernon 2006).  A plea of *nolo contendere* is treated as an admission of guilt and the law applicable to a guilty plea is also applicable to a plea of *nolo contendere*.  *Carter v. Collins*, 918 F.2d 1198, 1200 n. 1 (5th Cir. 1990).

of the plea. *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. (2000); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983).

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann [v. Richardson*, 397 U.S. 759, 770-71 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also U.S. v. Cothran*, 302 F.3d 279, 285-86 (5th Cir. 2002) (holding "[a] plea of guilty admits all the elements of a formal criminal charge and waives all non-jurisdictional defects in the proceedings leading to conviction").

To establish a claim that trial counsel's defective assistance rendered a plea involuntary, the petitioner must show that counsel's representation fell below an objective standard of reasonableness and a reasonable probability exists that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A claim of ineffective assistance of counsel presents a mixed question of law and fact. *Valdez v. Cockrell*, 274 F.3d 941, 946 (5th Cir. 2001).

In this case, the state district court sitting in habeas found that petitioner failed to overcome the presumption of voluntariness of his plea created by the trial court records. *Ex parte Morgan*, Application No.60,619-03, page 109. The state habeas court also found petitioner failed to show that his trial counsel's advice regarding his plea was unreasonable or that it rendered his plea involuntary. *Id.* The state habeas court concluded that in all things, petitioner failed to demonstrate that his conviction was improperly obtained. *Id.* at 110. The record supports the state district court's findings.

The test for determining a guilty plea's validity is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A court assessing the validity of a plea must look to "all of the relevant circumstances surrounding it and consider such factors as whether there is evidence of factual guilt." *Matthew v. Johnson*, 201 F.3d 353, 364-65 (5th Cir. 2000). A defendant pleading guilty must be competent and must have "real notice of the true nature of the charge against him." *Henderson v. Morgan*, 426 U.S. 637, 645 (1976).

Petitioner claims that he did not receive real notice of the true nature of the charge against him because he did not understand the specific intent element of the murder offense and neither the state district court nor his attorney adequately explained the element of intent to him. (Docket Entries No.1, No.2, No.16). "A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.' . . . Where a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met and the plea is invalid." *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005) (citations omitted). A trial judge, however, is not required to explain the elements of the charge to the defendant on the record. *Id.* "Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.* "Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty." *Id.*

The record reflects that the indictment charging petitioner with first degree murder was read aloud in open court on September 17, 2004. *Morgan v. State*, No.13-05-00106-CR, Reporter's Record Volume II, page3. Petitioner was charged with unlawfully, intentionally and knowingly causing the death of complainant by shooting him with a deadly weapon, namely a firearm. *Id*. He was also charged with unlawfully intending to cause serious bodily injury to complainant and causing complainant's death by intentionally and knowingly committing an act clearly dangerous to human life, namely, shooting complainant with a deadly weapon. *Id*. at 3-4. The indictment also alleged that petitioner had received two prior felony convictions. *Id*. at 4. Petitioner entered a not guilty plea to the charge and a plea of true to the enhancement paragraphs.[2] *Id.*

On September 20, 2004, petitioner changed his plea to *nolo contendere* upon the State's motion to withdraw the enhancement paragraphs from the indictment. *Id*., Volume III, page 3. The state district court questioned petitioner as to whether he made the *nolo contendere* plea freely and voluntarily. *Id*. at 3-4. Petitioner responded affirmatively. *Id*. at 4. The state district court reminded plaintiff that he was charged with first degree felony murder and the range of punishment for such conviction. *Id*. Petitioner and his attorney indicated that petitioner understood the ramification of his plea. The state district court further noted that the State had agreed to a presentence report and a punishment cap of forty years in return for a guilty plea. *Id*. Petitioner and his attorney indicated their understanding of the agreement. *Id*. The state district court asked petitioner, "Have you talked that over with your lawyer and has he explained all of that?" Petitioner responded affirmatively. *Id*. Petitioner indicated that with such knowledge, he still intended to make such plea. *Id*. at 5-6. The state district court noted the State's agreement to

---

[2] Petitioner's co-defendant was also arraigned and entered a plea. *Morgan v. State*, No.13-05-00106-CR, Reporter's Record Volume II, pages 7-8.

cap punishment and warned petitioner that it would not commit to a punishment range of five to forty years.  *Id.* at 6.  Petitioner indicated that he still wanted to waive his rights and enter a no-contest plea.  *Id.*  The state district court further questioned petitioner whether he understood what his lawyer had told him about his rights and the consequences of his plea, to which petitioner responded affirmatively.  *Id.* at 6-7.  Thereafter, the state district court found petitioner entered a free and voluntary plea.  *Id.* at 7.

Neither petitioner nor his attorney expressly indicated to the court at the hearing that petitioner understood the specific intent element of the offense of first degree murder.  However, in the Statement and Waivers of Defendant, petitioner indicated that he was mentally competent and understood the nature of the charges against him and the admonishments.[3]  *Id.*, Clerk's Record, Volume II, page 367.  He indicated that his attorney had fully discussed with him the plea papers and the consequences of entering a guilty plea.  *Id.* at 368.  He further indicated that he understood the admonishments in the plea papers and was aware of the consequences of his plea, which he made freely and voluntarily.  *Id.*  Petitioner swore to the veracity of these admonishments and signed the document.  His trial counsel, the assistant district attorney, and the state district judge also signed the document.  *Id.* at 369.

The state district court also questioned petitioner about the waivers that he signed and his understanding of the rights that he was waiving.  *Id.*, Reporter's Record, Volume III, pages 7-8.  Petitioner indicated his understanding.  *Id.*  The state district court then deferred a finding pending review of petitioner's PSI.  *Id.* at 8.

---

[3] In his Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession, petitioner indicated that he understood the allegations and that if witnesses, if called, would testify to his guilt.  *Morgan*, No.13-05-106-CR, Clerk's Record Volume II, page 363.  He further indicated his intent to enter a plea of *nolo contendere* without an agreed recommendation.  *Id.*  In the written plea Admonishments petitioner noted that he was charged with first degree murder and the range of punishment for such conviction was 5 to 99 years confinement.  *Id.* at 364.

In mid-December, 2004, petitioner gave his statement to the PSI investigator.[4] *Id.*, Supplemental Clerk's Record, pages 9-11. A month later, petitioner filed a motion to withdraw the plea. *Id.*, Clerk's Record, Volume II, page 374. At the hearing on January 12, 2005, petitioner testified that he did not understand the proceeding or the case. *Id.*, Reporter's Record, Volume IV, page 5. Petitioner indicated that he had been given a statement made by his co-defendant, which scared and shocked him. *Id.* He further complained that he did not understand the PSI. He claimed that his attorney had told him that it would be in his best interest to do so and that he did not want to sign it in the first place. *Id.*

On cross-examination, the State questioned petitioner regarding his responses to questions propounded to him by the state district court at the hearing wherein he entered the *nolo contendere* plea. *Id.* at 6. Petitioner indicated that he understood the question about whether his plea was voluntary, but he did not want to sign for the PSI. *Id.* Petitioner further testified that his attorney had explained the plea bargain. *Id.* Petitioner claimed that he "knew what [he] was told, and [he] just signed because of what [he] heard. *Id.* at 7. The state district court denied the motion to withdraw the plea. *Id.*; Clerk's Record, Volume II, page 376.

At the sentencing hearing that followed, petitioner testified that he did not intend to shoot complainant and that he did not shoot complainant. *Id.*, Reporter's Record Volume IV, pages 7-8. Petitioner claimed that he thought there was going to be a fist fight. *Id.* at 8. Petitioner testified that he chased one of the men at the apartment and heard a gunshot while in

---

[4] Petitioner told the presentence investigator on December 17, 2004, that he did not have any contact with the two victims. *Morgan v. State*, No.13-05-00106-CR, Supplemental Clerk's Record, page 10. He heard a gun shot and then ran to the hotel where he had been staying. *Id.* Petitioner indicated that he had spoken only to attorney while in jail and that his attorney had informed him of some things that were mentioned in the offense report reported by witnesses and so-called friends. *Id.* The investigator reported that petitioner wanted the judge and his attorney to know that he wants to go to trial and does not want to have a presentence investigation report "because 'he does not have anything to do with what happened.'" *Id.*

pursuit of the man. *Id*. at 9. After hearing the shot, he kept running. *Id*. After further questioning, petitioner's trial counsel argued for leniency. The state district court found petitioner guilty and assessed punishment. *Id*. at 13. Petitioner did not say anything to show why the sentence should not be pronounced against him. *Id.*

Petitioner now argues that his choice to enter a no-contest plea is inconsistent with his desire to withdraw the plea and his denial of having shot complainant at the sentencing hearing and that he could only have entered such plea out of ignorance of the charge's specific intent requirement. The intent element of first degree murder does not, under Texas law, require a showing that a defendant himself shot complainant. Under Texas law, a party to a murder is equally in violation of the first degree murder statute so long as the party acts with the specific intent to cause death or serious bodily injury, which results in death.[5] *See* TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003); *Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex. Crim. App. 2005). Petitioner's assertion that he did not shoot complainant does not necessarily preclude him from admitting his specific intent under the statute, especially in light of evidence that three people identified petitioner as one of two males involved in the murder and aggravated assault of complainant.[6] Taken together, these facts could show that petitioner and his co-defendant intended to kill or cause serious bodily injury to complainant, which could make both men guilty

---

[5] At the arraignment hearing where petitioner first entered a not guilty plea, the State indicated to the state district court that it would request a charge on the parties. *Id.*, Reporter's Record Volume II, page 8.

[6] One witness reported that petitioner and another black male, later identified as petitioner's co-defendant, fought with complainant and his companion. The witness indicated that the co-defendant pushed complainant to the ground and pulled a gun from his waistband and shot him. Petitioner fought complainant's companion and pulled a gun and shot the companion. *Morgan v. State*, No.13-05-00106-CR, Supplemental Clerk's Record, page 8. Latasha Green, the instigator of the altercation between the men, told police officers that Nathan Guillory, petitioner's co-defendant, and petitioner were involved in the assault and murder of complainant to avenge an argument that she had with complainant. *Id.* A non-witness to the offense attested that petitioner told him that he was involved in the murder. *Id*. at 25-26. The witness indicated that both Guillory and petitioner shot complainant and that he had seen petitioner's gun. *Id.*

of first degree murder.  Petitioner's testimony at the sentencing hearing that he did not intend to kill complainant does not necessarily indicate that he did not understand the specific intent element of the murder offense; instead, such testimony was proffered to mitigate a severe sentence during the sentencing phase of trial.

Moreover, the record does not support petitioner's assertions that neither the trial court nor his trial counsel adequately informed petitioner of the waivers, the content of the forms that he signed, and the specific intent required to sustain a conviction for first degree murder, or that petitioner did not understand the same.  Rather, petitioner executed the written plea admonishments, in which he acknowledged that trial counsel provided fully effective and competent representation and that he was "totally satisfied" with counsel's representation.  *Morgan v. State*, No.13-05-00106-CR, Clerk's Record, Volume II, page 368.  *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (noting that testimony in open court carries a strong presumption of verity).  The record belies petitioner's complaint of deficient performance by his trial attorney, and petitioner has not demonstrated prejudice sufficient to undermine the voluntary nature of his *nolo contendere* plea.  Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his *pro se* petition to be of probative evidentiary value.  *Ross v. Estelle*, 694 F.2d 1008, 1011-12 (5th Cir. 1983).

Based on the foregoing, the Court finds that petitioner has failed to show the state habeas court's findings regarding the voluntariness of his plea and the effectiveness of his trial counsel are an unreasonable application of federal law or an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  The Court will grant respondent's motion for summary judgment.

IV. CERTIFICATE OF APPEALABILITY

A certificate of appealability from a habeas corpus proceeding will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard "includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotations and citations omitted). Stated differently, the petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*; *Beazley v. Johnson*, 242 F.3d 248, 263 (5th Cir. 2001). On the other hand, when denial of relief is based on procedural grounds, the petitioner must not only show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Beazley*, 242 F.3d at 263 (quoting *Slack*, 529 U.S. at 484); *see also Hernandez v. Johnson*, 213 F.3d 243, 248 (5th Cir. 2000). A district court may deny a certificate of appealability, sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). The Court has determined that petitioner has not made a substantial showing of the denial of a constitutional right. Therefore, a certificate of appealability from this decision will not issue.

V. CONCLUSION

Finding no unreasonable application of clearly established federal law in the record of the state habeas proceeding, the Court ORDERS the following:

1.      Respondent's motion for summary judgment (Docket Entry No.14) is GRANTED.

2.      Petitioner's petition for federal habeas relief is DENIED.

3.      A certificate of appealability is DENIED.

4.      This habeas action is DISMISSED with prejudice.

5.      All other pending motions, if any, are DENIED.

        The Clerk will provide a copy to the parties.

SIGNED at Houston, Texas, this 17th day of July, 2008.

                                        MELINDA HARMON
                                    UNITED STATES DISTRICT JUDGE